PER CURIAM.
| ,Writ granted. The state seeks review of the district court’s ruling, which found there was no probable cause, releasing the defendant from his bail obligation on racketeering charges. The district court, after hearing the state’s evidence at the preliminary examination, found there was no probable cause based on jurisdiction. For the following reasons, we hold the district court’s ruling was in error. We find the testimony at the preliminary examination was sufficient to show the defendant was connected to the alleged criminal enterprise; further, the testimony was sufficient to show acts in furtherance of the alleged criminal enterprise were committed in Tangipahoa Parish.
The defendant, Cecil Redditt, is charged, with others, with violating the laws against racketeering; specifically, receiving proceeds derived from racketeering activity (La. R.S. 15:1353(A)); maintaining control of a racketeering enterprise (La. R.S. 15:1353(B)); participating in a racketeering enterprise through a pattern of racketeering activity (La. R.S. 15:1353(C)); and conspiring to violate the provisions of Sections A, B, and C (La. R.S. 15:1353(D)). The racketeering enterprise is described in the affidavit of probable cause for the arrest warrant as “... existing] for the purpose of obtaining marijuana and cocaine from Houston, Tex *1077 as, to be distributed for profit in Huntsville Alabama, and elsewhere.”
|gAs explained in the affidavit, there were main suppliers, the organization’s coordinators, and the “mules,” “car renters,” mid-level dealers, managers and assistants, and lower level dealers. The defendants are described in the affidavit as “part of a eompartmental, multi-level organization who all participated in the operation and management of the enterprise.” The racketeering activity is further described in the affidavit, as follows: “In general, the members of the organization exist for the purpose of continuously smuggling, transporting, storing and distributing marijuana and cocaine in Texas, Louisiana, Alabama, and Georgia on a wholesale, retail, and personal use level.”
Officer Leland Dwight, a 25 year veteran of the Louisiana State Police (LSP),[1] testified at the preliminary examination held on October 10, 2012. According to Officer Dwight, LSP officers arrested Corey Hammond and Alesha Smith, whose vehicle was stopped while traveling through Tangipahoa Parish on September 16, 2011. Hammond and Smith were transporting at least 27 pounds of marijuana.[2] At that time, Hammond and Smith gave inculpatory statements about others involved in an organization that was transporting marijuana and cocaine from Houston, Texas (or Arizona) to Huntsville, Alabama.
The context of the September 2011 arrest within the larger criminal enterprise was further fleshed out for state police investigators when Hammond, Marcus An-ders and Tiffany Monroe were arrested on October 19, 2011 in West Baton Rouge Parish, while transporting 2 kilos of cocaine. At that -time, Anders gave statements to police describing the criminal organization. According to |sOfficer Dwight, Anders described a very sophisticated and compartmentalized criminal organization of 20 to 30 people, with defined job duties for each member.[3]
Officer Dwight testified to the following from the statements of Anders obtained after his October 2011 arrest. According to Anders, he and Hammond were equal partners in the management of this drug selling enterprise. Although Anders had no personal dealings with Redditt, the defendant here, Anders described Redditt as a person to whom Hammond brought loads of marijuana and cocaine for resale. An-ders described that Hammond and Redditt both worked at a CarMax dealership in or near Huntsville, Alabama.
In connection with Hammond’s arrest, LSP seized Hammond’s cell phone. From text messages on Hammond’s cell phone, LSP was able to determine a phone number identified as Redditt’s. Officer Dwight testified statements taken from other people arrested in connection with this criminal enterprise discuss that Redditt worked at CarMax in Huntsville and that he was an associate of Hammond who purchased drugs from Hammond for resale. In addition, Officer Dwight described how text messages were obtained from Redditt’s cell phone to Hammond. The content of those messages showed Redditt inquired when Hammond would have marijuana or cocaine for sale and Hammond would respond either that he had drugs for Redditt *1078 to sell, would have drugs at a later time, or was en route making a drug run. In one of the exchanges, Redditt complained about the quality of cocaine which had been sold to him and Hammond explained he had purchased the cocaine from someone else and could not guarantee its quality-
Officer Dwight testified Hammond and Redditt would sometimes speak in code words in their text message exchanges, or at other times, would just refer to the drugs explicitly. Although most of the individuals involved used trap phones, |4or drop phones, the officers were able to piece together these exchanges from their investigation.[4] Officer Dwight testified these conversations between Hammond and Redditt occurred between August 20, 2011 and October/November of 2011.
After LSP obtained evidence of the wider criminal enterprise through their investigation and the subsequent October arrest, Hammond, Anders and others (including Redditt) were charged with four counts of racketeering, pursuant to La. R.S. 15:1353(A-D).
The evidence connecting Redditt to the alleged criminal enterprise includes the statement of one of the alleged managers of the criminal enterprise (Anders) that Redditt was one of the dealers used by the other manager (Hammond) to sell drugs in the Huntsville, Alabama area, after the drugs were transported from Houston to Huntsville. Other members of this alleged criminal enterprise were aware of a connection between Hammond and Redditt through their place of employment. More compelling, the state presented testimony there are text messages on the phones of both Hammond and Redditt discussing the availability of drugs for sale, the transportation of those drugs, and the quality of those drugs.
La.C.Cr.P. art. 611(A) provides in pertinent part: “If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.” Where there is compelling evidence that the alleged criminal enterprise transported drugs in and through Tangipahoa Parish (as evidenced both by Anders’ further statements and the September 2011 arrest of Hammond and Smith, as well as their statements) on eight occasions, with evidence showing Redditt as a middle-man for the ultimate sale of those drugs, the state has shown probable cause of Redditt’s involvement in |fithe alleged criminal enterprise in Tangi-pahoa Parish such that Redditt should be subject to the requirement of bail on the racketeering charges filed there. The district court’s finding of no probable cause is reversed; the matter is remanded for further proceedings.

. Officer Dwight was an agent for five years, and a supervisor in narcotics for 20 years. He is now an investigator with the LSP.

. In his testimony, Officer Dwight refers to the amount of marijuana seized in September 2011 as being 27, 28 or 30 pounds.

.For instance, some people gathered the money to purchase the drugs. Others would obtain rental cars and travel to and from Houston and Alabama or Georgia. Certain people would keep the money in their bank accounts’ or on their credit cards.

. A trap phone, or a drop phone, is a prepaid phone that is difficult to trace and to obtain records. Officer Dwight testified the officers sometimes got only one side of a conversation: at other times, they had both sides of the conversation.